[Cite as *State v. Howard*, 2025-Ohio-1220.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 24CA9 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND<br>JUDGMENT ENTRY</u> |
| BRIAN A. HOWARD, | : | |
| Defendant-Appellant. | : | **RELEASED 4/02/2025** |

APPEARANCES:

Karyn Justice, The Law Office of Karyn Justice, LLC, Portsmouth, Ohio, for appellant.

Jeffrey C. Marks, Ross County Prosecutor, Pamela C. Wells, Ross County Assistant Prosecutor, Chillicothe, Ohio, for appellee.

Hess, J.

{¶1} Brian Howard appeals the judgment revoking his community control and ordering him to serve his original 18-month sentence on his conviction for aggravated assault. Howard contends that the trial court erred when it failed to consider his competence to proceed with a community control violation hearing. He argues that there was a substantial basis to suggest that he was incompetent, and the trial court abused its discretion when it proceeded with the revocation hearing despite all of the indications that he was incompetent. The State argues that there was not a substantial basis to suggest that Howard was incompetent because he had been found competent at an earlier stage of the proceedings, and he indicated that he understood the revocation proceeding and assisted his counsel during it. We find that Howard demonstrated a substantial basis for the suggestion that he was incompetent, and the trial court abused its discretion when it

denied his request for a competency evaluation and did not consider his competency status as a mitigating factor in the revocation proceeding. We sustain Howard's assignment of error and reverse the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} In July 2022, the Ross County grand jury indicted Howard on one count of robbery in violation of R.C. 2911.02, a second-degree felony. At the arraignment, the State informed the trial court of the underlying facts and explained that law enforcement officers were dispatched to the Floyd Simantel Clinic, a mental health care center and transitional housing program, because of an assault and theft involving Howard. Howard's trial counsel advised the court that he spoke to Howard and "there may be some mental health issues we are going to explore later." Two weeks later, Howard's counsel filed a motion for a competency determination under R.C. 2945.37 and entered Howard's not guilty plea by reason of insanity. The trial court ordered a competency evaluation and granted the evaluator several extensions to complete the report. The evaluator determined that Howard was competent to stand trial but did not reach an opinion concerning the merits of the not guilty by reason of insanity plea because the evaluator could not obtain access to certain treatment records and that issue remained pending.

{¶3} In March 2023, the State and Howard reached a plea agreement in which Howard would withdraw his not guilty by reason of insanity plea and plead guilty to third-degree felony robbery (down from the original second-degree charge), with a recommendation that Howard receive community control, subject to an 18-month prison term should he violate it. At the change of plea hearing, the trial court inquired into Howard's ability to enter a knowing, intelligent, and voluntary plea. Howard stated that he

was on "my psych meds" and that he was diagnosed with "schizoaffective disorder," but was not taking his "Seroquel." Howard stated that he felt "clear headed" and could understand "everything that is going on." The trial court then asked Howard's trial counsel, "You've spent considerably more time with him than I have; do you have any concerns that he is not able to knowingly, intelligently, and voluntarily change his plea?" Howard's counsel stated that he had no concerns with Howard's ability to enter the plea. Following a lengthy colloquy with Howard in which Howard responded intelligently, the trial court accepted his change of plea.

{¶4}    However, at the disposition hearing in April 2023, the trial court determined that, based on conflicts between the police report and the victim impact statement, it was "not comfortable with this" due to the alleged severity of the injuries claimed by the victim. The State responded that it was unaware of any injuries, that the police report was consistent with the surveillance video, and that it would locate any relevant medical records to determine the extent, if any, of injuries to the victim. The trial court allowed Howard to withdraw his guilty plea.

{¶5}    In July 2023, the State and Howard reached a new plea agreement in which Howard pleaded guilty to aggravated assault, a fourth-degree felony, with a recommendation that he receive community control and a reserved 18-month prison term. The trial court inquired into Howard's ability to enter a knowing, intelligent, and voluntary plea. When asked if he was under the influence of drugs, alcohol, or medication, Howard stated, "I didn't take my morning med." The trial court stated, "I know that you suffer from a mental illness or disease, but, can you tell me what you believe you suffer from?" Howard stated, "I believe I suffer from just bipolar disorder and not the schizophrenic

disorder." The trial court asked Howard whether, except for the morning medication he admitted to not taking, he had been taking his medication as prescribed and Howard stated that he had. The trial court also asked Howard's attorney if he had "any concerns that he is not able to knowingly, intelligently, and voluntarily plead guilty to this offense?" and Howard's attorney stated that he had "no such concerns." Again, the court engaged Howard in a lengthy colloquy concerning his rights and his plea, to which Howard responded intelligently. The trial court accepted Howard's guilty plea to aggravated assault and ordered him to serve community control for 1 year, with an 18-month prison term should he violate community control.

{¶6} In December 2023, the State alleged that Howard had violated community control by: (1) committing several trespass and vandalism offenses in October, November, and December 2023, which were the subject of municipal court proceedings; (2) failing to advise his probation officer of the violations; and (3) failing to report to his probation officer as required since mid-November 2023. At the preliminary hearing on the community control violations, Howard's trial counsel informed the trial court that Howard has ongoing cases in municipal court for which he was receiving competency evaluations, but he did not know the details at that time. The trial court set the matter for a final hearing a little over a week later. Prior to the final hearing, Howard's trial counsel filed a suggestion of incompetency and requested a competency evaluation under R.C. 2945.37.

{¶7} In January 2024, the trial court held the final hearing on Howard's community control violations. At the beginning of the hearing, the trial court addressed Howard's request for a competency determination:

> As far as the incompetency hearing, this is not a trial. You filed it under
> Section 2945.37, which is competency to stand trial. He has already been

adjudicated guilty. I did a quick little bit of research to see if it would apply to community control violations; as opposed to a trial, and it's the court's discretion. In this case I've got three (3) violations, quite frankly I think the first two (2) are moot. The third one I don't know how his testimony would matter. With that it's my intention to proceed so, [assistant prosecutor], do you have any witnesses you wish to call?

{¶8} Howard's probation officer testified that this was Howard's first violation of community control, and it was for failure to report to him and for failure to remain out of trouble with the law as reflected by his municipal court cases. However, the probation officer testified that all of Howard's municipal court cases were dismissed because Howard was found to be incompetent. When asked about Howard's ability to keep dates straight or whether Howard has memory issues or mental health issues, the probation officer testified that Howard has been able to report on schedule in the past. The probation officer testified that he was not able to determine if Howard has memory issues and Howard's mental health "is beyond my professional experience. I would assume that he does he has been found by at least – somebody in the court that he is incompetent, but, I can't – that's not my professional level of experience. I don't know."

{¶9} Howard's counsel informed the trial court that it was his "understanding that Brian Howard is deeply mentally ill . . . ." The trial court responded that it had discretion whether to order a competency determination. The trial court then addressed the competency issues in the municipal court cases:

> First off, the stuff that municipal court, those were all dismissed, they didn't do competency evaluations. And you can see what they were doing, they were trying to avoid doing it. They literally dismissed cases and said file this with the Ross County Prosecuting Attorney's Office. The Ohio Revised Code tells the municipal court what to do, they decided not to do competency evaluations. They decided to pass it to the Ross County Prosecutor[']s Office. So, I don't know whether he is competent or not. I don't believe that court made that determination. As far as this hearing, his failure to report –

[Defense Counsel]: Forgive me. The defense is – that procedural issue aside it has been my observation and observation of other people who around [sic] him – it is the opinion of – the defense believes that Brian Howard is deeply – deeply inhibited by mental health issues, the exact nature of which is unknown but, they seem to be extensive. It is the opinion of the defense that Brian Howard is not in need of punishment he is in need of rehabilitation. I get more confusion and detachment from reality than I get any sort of direct malice from Brian Howard.

The Court: He spent the last six (6) months getting arrested every fifteen (15) to twenty (20) days. Why didn't somebody do something in the last six (6) months to help this man out, other than come to me now and say, he's your problem? Why is this, why is there zero (0) responsibility for anybody but me?

[Defense Counsel]: Your Honor, unfortunately I cannot speak to the failures of the –

The Court: Of everybody. He had an attorney; I guarantee he had a public defender in every single hearing and case he had down there. Why didn't anyone -- why didn't any of them do anything? Why didn't that court – What I have is escalating behavior where someone is going to get hurt or killed. Keep going if there is something else you want to say. Whether it is punishment –

[Defense Counsel]: I've –

The Court: We are protecting society at this point.

Mr. Howard: I could've beat all the charges, I'm innocent.

[Defense Counsel]: You don't need to speak.

The Court: Well – he's going to get a chance to speak[,] he is going to get allocution so –

[Defense Counsel]: The defense has said it's [sic] peace [sic], Your Honor.

The Court: Mr. Howard, is there anything that you want to say, anything you wish to say in mitigation of punishment?

Mr. Howard: The day I was arrested I was not trespassing, they just don't like me in this town for being mentally ill and I uh, accidentally just forgot my court date – I mean my probation date and that's pretty much all there is to it. It was an accident.

The Court: Ok. So, you understand what's going on here? You understand why you are here, is that right?

Mr. Howard: Not a hundred percent but, yes.

After Howard responded about his level of understanding as not being "a hundred percent," the trial court turned to the determination of jail time credit. The trial court engaged in no further discussion with Howard concerning his understanding of the proceeding.

**{¶10}** The trial court found that Howard was no longer amenable to community control, terminated it, and imposed the original 18-month prison term, with 322 days of jail credit. In the judgment entry the trial court overruled Howard's request for a competency evaluation, finding that it "does not apply to the community control sanctions violation in this case."

## II.  ASSIGNMENT OF ERROR

**{¶11}** Howard presents the following assignment of error:

The trial court erred by failing to consider Mr. Howard's competence to proceed in a community control violation hearing.

## III.  LAW AND ANALYSIS

**{¶12}** We review the trial court's decision whether to grant a competency hearing under an abuse of discretion standard. *State v. Duffy*, 2020-Ohio-3137, ¶ 33 (9th Dist.). "[T]he decision whether to grant a hearing on competency at a revocation hearing is within the sound discretion of the trial court, and must be determined on a case-by-case basis." *State v. Davis*, 2016-Ohio-879, ¶ 10 (12th Dist.); *State v. Brank*, 2007-Ohio-919, ¶ 44 (5th Dist.); *State v. Qualls*, 50 Ohio App.3d 56, 58 (10th Dist.1988).

{¶13} "A community control revocation hearing is not a criminal trial." *State v. Dye*, 2017-Ohio-9389, ¶ 12 (4th Dist.). Thus, a defendant in a community control revocation hearing does not have "the full panoply of due process rights." *Qualls* at 58. Rather, the defendant "is entitled to a preliminary and final revocation hearing" with the following due process requirements: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body . . . ; (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Qualls* at 57, quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) and citing *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

{¶14} However, the effectiveness of these due process rights "may be rendered null if the defendant is not competent to understand and to participate in or to assist counsel in participating in the proceedings." *Qualls* at 58. Therefore, the question of defendant's competency may be raised and "the decision whether to hold such hearing must be made on a case-by-case basis." *Id.* "[A] defendant shall be presumed competent unless the issue is raised before or during a probation revocation hearing and there is demonstrated a substantial basis for the suggestion of incompetency." *Id.; State v. Holman,* 2014-Ohio-3908, ¶ 8 (8th Dist.) ("in a probation hearing, a defendant has a due process right to a competency hearing when there is a substantial basis for the suggestion that appellant is incompetent").

**{¶15}** In *Qualls, supra*, the defendant did not raise the issue of his competency at any time during the revocation proceedings and the transcript indicated that the defendant "was able to follow the dialogue . . . and was cognizant of the reasons for his arrest and subsequent probation violation." *Qualls* at 58. The defendant also participated in the proceedings and informed his counsel "as to the nature of the offense which precipitated the parole revocation hearing." *Id.* Because the defendant did not request a competency determination and there was nothing in the record that suggested the trial court abused its discretion when it decided not to conduct one, the appellate court determined that the trial court did not err in proceeding with the revocation hearing without conducting a competency determination in accordance with R.C. 2945.37(A).[1]

**{¶16}** In *State v. Bell*, 66 Ohio App.3d 52 (5th Dist. 1990), the defendant violated probation when she violated "any federal, state, or local law." *Id.* at 54. Prior to the revocation hearing, defendant requested a competency evaluation, which the trial court granted, and it was determined that defendant was "incompetent to stand trial" and that she was "not sane at the time of offense." *Id.* at 54, fn. 1.  The trial court determined that the "competency-to-stand-trial provisions of R.C. 2945.37 *et seq.* were inapplicable to post-conviction proceedings" and went forward with the evidentiary hearing without holding a competency hearing. However, the trial court allowed the defendant to submit the competency report into evidence. Following the hearing, the trial court revoked the defendant's probation.

**{¶17}** On appeal, the defendant argued that the trial court violated her due process rights when it revoked her probation when she was not sane at the time of the

---

[1] R.C. 2945.37 governs competence to stand trial, raising of issue, procedures, and municipal courts.
R.C. 2945.371 governs evaluations of mental condition and access to report.

offense and was incompetent to assist in her defense at the revocation proceeding. She also argued that the trial court failed to consider her mental status as a mitigating factor. The *Bell* court distinguished her case from *Qualls, supra,* noting that in *Qualls* the issue was whether the trial court abused its discretion in not granting a request for a competency determination. In *Bell,* the trial court granted the defendant's motion requesting a competency evaluation and allowed the report to be submitted into evidence, but ultimately decided to revoke her probation. The appellate court held that it was not fundamentally unfair to revoke Bell's probation even though she may have been insane:

> From the foregoing, we believe due process does not require a court to consider the defense of insanity in revocation proceedings. Had appellant here violated a condition that she would not leave the state of Ohio, we do not find it fundamentally unfair to revoke her probation even though appellant claims ignorance of the state border. The privilege of probation rests upon the probationer's compliance with the probation conditions and any violation of those conditions may properly be used to revoke the privilege. It is not fundamentally unfair to require an individual who has been convicted of a crime and granted conditional probation to adhere strictly to those conditions. An insanity defense focuses on the probationer's state of mind. However, the true focus of the probation revocation proceeding is whether a condition of probation has been violated, and if so, what should be done. The welfare and safety of society outweigh the interest of the probationer who has violated a condition of probation while sane or insane.

*State v. Bell*, 66 Ohio App.3d 52, 56–57 (5th Dist.1990). The *Bell* court also noted that *Qualls* held that "a trial court may revoke probation even when the violation of a probation condition was beyond the control of the defendant (such as insanity) because there remains a threat to the safety and welfare of society." *Id.* at 56. " '[I]nsanity is not a complete defense in a probation revocation hearing but is a mitigating factor which a court should consider when the issue is timely raised.' " *Bell* at 56, quoting *Qualls* at 60.

{¶18} Thus, the issue presented in *Bell* is distinguishable from the issue Howard presents on appeal because in *Bell,* the trial court granted Bell's motion for a competency

evaluation and allowed the competency report to be submitted into evidence at the revocation hearing for consideration as a mitigating factor. Here the trial court did not grant Howard's motion for a competency evaluation, thus there was no competency report submitted at the revocation hearing for the trial court's consideration as a possible mitigating factor.

**{¶19}** The parties have cited several other cases in which courts have analyzed whether a trial court abused its discretion in not ordering a competency evaluation in the context of revocation proceedings. In *State v. Brank*, 2007-Ohio-919 (5th Dist.), Brank had been placed on community control following a gross sexual imposition conviction for having sexual contact with his six-year-old grandson. He violated community control after he attempted to take a three-year-old neighbor boy for a walk without the caregiver's knowledge or permission. At the start of the revocation hearing, Brank's counsel informed the court that a jail administrator contacted him about Brank's mental health. Brank had asked the jail administrator where his shoes were, when they were on his feet. Brank also repeatedly asked the administrator what his name was and told his attorney he did not know why he was in jail and could not remember what happened during the incident that led to the revocation hearing. Brank's wife provided unsworn testimony about changes in Brank's behavior and conduct. The trial court decided it would go forward with the revocation hearing, hear the evidence, and then decide whether to evaluate Brank's competency. Following the presentation of evidence, the trial court held, "I'm going to conclude that the competency of Mr. Brank to testify viz a viz 2945.371 of the Revised Code is not an issue at this hearing for the reason that the testimony presented by the State is so clear and so disconnected if you will from any need of Mr. Brank to be able to

give you assistance in defending him that the issue is academic." *Id.* at ¶ 30. The trial court asked Brank if he understood "what we're going to be doing right now?" and Brank stated, "I'm afraid so" and Brank explained that he understood he would be sentenced "to a period of incarceration." Brank added that he could not remember the date the offense occurred and did not know what law he broke. On appeal, the court found that the trial court did not abuse its discretion in denying Brank's request for a competency hearing because it agreed with the trial court's conclusion that Brank's competency to testify was not an issue at the hearing because the State's evidence was so clear.

{¶20} In *State v. Holman*, 2014-Ohio-3908 (8th Dist.), Holman's case was transferred to the mental health docket, and he was placed on community control. He violated probation twice and each time probation was extended, and he was ordered treatment at an inpatient facility. *Id.* at ¶ 2-5. He violated probation a third time and was sentenced to prison. Holman appealed and argued that the trial court erred by not ordering a competency evaluation. He argued that his low IQ and mental and substance abuse issues were evidence of an obvious need to have his competency addressed. The appellate court rejected Holman's argument and compared Holman's case to *Qualls, supra.* It found that Holman, like the defendant in *Qualls*, did not raise the issue of his competency to participate in, or understand the proceedings with the trial court. The appellate court found that it was clear from the record in *Holman* and in *Qualls*, that both defendants were able to follow the dialogue during the hearing and were cognizant of the reasons for their arrests. *Id.* at ¶ 6, 11.

> While it is clear from the record that Holman suffers from mental health and substance abuse issues, neither Holman's attorney, probation officer nor the court raised the issue of competency and requested that an evaluation and competency hearing be held. Holman had the wherewithal to request

that the court withdraw his initial guilty plea, discuss his case with his appointed counsel, inform the court regarding his medications, and answer the court's questions during the plea colloquy. The trial court properly acknowledged Holman's mental health issues by appointing trial counsel experienced in representing clients with mental health issues and also by placing Holman's case on the mental health docket. No further action by the court was required. We overrule Holman's first assigned error.

*Holman* at ¶ 12.

{¶21} In *State v. Davis*, 2016-Ohio-879 (12th Dist.), Davis was convicted of trafficking in heroin and sentenced to three years of community control. He violated the terms twice and each time he admitted the violations and was continued on community control. He violated community control a third time involving allegations of drug abuse and he tested positive for drug use. *Id.* at ¶ 2-4. Davis initially intended to admit the violations, but later indicated he wanted to plead not guilty by reason of insanity "because he didn't understand what was happening, he was using drugs at the time, and had '50,000 things going through my head right now.' " *Id.* at ¶ 5. His attorney moved for a competency evaluation, which the trial court denied after engaging in a colloquy with Davis. On appeal, Davis argued the trial court erred when it denied his motion for a competency evaluation. The appellate court disagreed. First it noted that Davis did not request a competency evaluation until after the revocation hearing had begun. His trial counsel believed that he was going to admit the violations, but Davis changed his mind during the hearing and stated he was "going to plead insanity on this, because it's not right. . . . I don't understand how you're all doing this. I don't understand it at all." *Id.* at ¶ 11. The court noted that after Davis complained about a lack of understanding, the trial court fully explained the proceedings to Davis, and he stated he understood twice during the colloquy. After Davis stated that he understood, the trial court denied his request for

a competency hearing. Later Davis stated, "I don't know, I took a lot of drugs today and I just don't understand. I mean, I understand what you're saying, because – but there's like 50,000 things going through my head right now. I don't – I don't know what to say." *Id.* at ¶ 12.

**{¶22}** The appellate court found that the trial court did not abuse its discretion in denying Davis's request for a competency hearing because it was clear that after the trial court explained the proceedings, Davis stated that he understood on two separate occasions during the colloquy. The appellate court found, "the trial court could properly determine whether the situation warranted further investigation into Davis' competency. Absent Davis' self-serving statements, there is no evidence warranting further investigation into Davis' competency." *Id.* at ¶ 13.

**{¶23}** Last, in *State v. Duffy,* 2020-Ohio-3137 (9th Dist.), Duffy violated community control and the trial court sentenced him to prison. On appeal, Duffy argued that the trial court abused its discretion when it denied him a competency evaluation prior to the revocation hearing. He argued that he had demonstrated a "substantial basis" for a competency determination because the trial court had previously ordered a mental health screening. The appellate court found that the "mere existence of a prior order for a mental health screening, without more, does not establish 'a substantial basis for the suggestion that appellant is incompetent.' " *Id.* at ¶ 33. The court also found no evidence in the record to support Duffy's argument that he and his father were "known by the trial court to have mental health issues." It found that Duffy had "failed to demonstrate that a substantial basis existed for the suggestion that he was incompetent," and determined that the trial court did not abuse its discretion in denying his request for a competency evaluation. *Id.*

{¶24} These cases demonstrate that when determining whether there was a "substantial basis" for a competency evaluation, appellate courts consider a number of factors including: (1) whether the defendant requested a competency evaluation prior to the final revocation hearing; (2) the strength of the State's evidence of a probation violation; (3) the danger the defendant poses to society as evidenced by the probation violation; (4) witnesses' statements concerning the defendant's competency; (5) the presence or lack thereof of prior competency determinations; (6) the trial court's colloquy with the defendant; and (7) the defendant's ability to understand and participate in the proceedings. Even where a substantial basis for a competency evaluation exists and one is ordered by the trial court, a defendant's incompetency is a "mitigating factor" and not a "complete defense" in determining whether to terminate community control or probation. *Qualls, supra; Bell, supra.*

{¶25} Here, Howard requested a competency evaluation in a timely manner and his defense counsel stated on the day of the hearing that Howard was "deeply inhibited by mental health issues," that those issues "seem to be extensive," and that he was suffering from "confusion and detachment from reality." Howard's competency was at issue from the onset of the case, and he had one previous competency evaluation and several other requests for competency evaluations in the municipal court. According to defense counsel's representations, although Howard had previously been determined competent, the report was incomplete and had not fully evaluated his insanity plea. Howard twice reported that he was inconsistent in taking his medication and he eventually denied suffering from "schizophrenic disorder." Additionally, while Howard's probation officer was unable to make a professional assessment of Howard's competency, he

testified that his municipal court cases had recently been dismissed because Howard was found by that court to be incompetent.

{¶26} The State did not present any evidence of two of the three alleged community control violations, presumably because the municipal court had dismissed the criminal charges against Howard due to his incompetency. Although the trial court expressed concern that "someone is going to get hurt or killed," the dismissed violations were for vandalism and trespass offenses and there was no evidence in the record that Howard's community control violations threatened or caused physical harm to others. Thus the only remaining violation pending was Howard's failure to report to his probation officer for two reporting dates in mid-November and early December 2023. Howard's probation officer testified that Howard reported consistently in the past and this recent violation was his first violation of community control. Howard responded intelligently when asked about this violation and explained that he had simply forgot his report date and that it was an accident.

{¶27} We note that the trial court conducted a thorough and thoughtful colloquy with Howard during the change of plea hearings and satisfied itself that Howard knowingly, voluntarily, and intelligently entered his guilty plea. However, there was very limited colloquy throughout the revocation proceedings. There was no discussion between the trial court and Howard at the preliminary hearing from which one could discern Howard's level of understanding. At the final revocation hearing, the trial court asked Howard if he wanted to say anything in mitigation of punishment and if he understood what was going on. While Howard gave an intelligent response for missing his probation reporting date, his response to the dismissed trespassing and vandalism

charges was somewhat conspiratorial. He claimed innocence and that he was being targeted by the town for being mentally ill. He gave an ambiguous response when asked if he understood what was going on, stating "not a hundred percent but, yes." The trial court failed to seek further clarification following Howard's response, even though earlier in the hearing the trial court stated, "I don't know whether he is competent or not."

**{¶28}** Based on a review of all the factors, we find that there was a substantial basis for the suggestion that Howard was incompetent and thus the trial court abused its discretion when it denied Howard's request for a competency evaluation. Unlike the defendants in *Qualls, Holman,* and *Davis, supra,* Howard timely asked for a competency evaluation prior to the final revocation hearing. Also, unlike *Davis,* in which the trial court asked further questions and gave explanations when the defendant gave an ambiguous answer about his understanding of the proceeding, here the trial court made no further inquiries and provided Howard no further explanation about the proceeding. Unlike in *Brank*, where the defendant was a convicted child sex offender and his community control violation involved taking a very young neighbor child "for a walk," Howard's only remaining violation was failure to report to his probation officer. The dismissed charges did not include an element of physical harm to others. Thus, he posed much less danger to society than the defendant in *Brank*. Unlike in *Holman,* where the trial court acknowledged the defendant's mental health issues and determined through extensive dialogue that he was cognizant of the reasons for his arrest, the trial court here explicitly stated it was not able to form an opinion as to Howard's competency and it engaged in no colloquy with him. The trial court made no statements concerning its belief about Howard's ability to understand and participate in the proceeding. The limited record of Howard's statements

at the hearing do not sufficiently establish that Howard understood the proceeding or that he understood why he was charged for trespass or that the charges had been dismissed.

**{¶29}** Even though insanity is not a complete defense, it is a mitigating factor that should have been considered by the trial court when it was timely raised. The trial court did not determine Howard's competency and there is no evidence in the record that it considered his competency status as a mitigating factor when determining whether to revoke his community control even though there was a substantial basis for the suggestion of incompetency as reflected by the dismissed charges based on his incompetency, his defense counsel's statements, and the lack of evidence in the record that Howard understood the proceedings. Moreover, the trial court conceded its inability to conclude from Howard's appearance at the hearing whether he was competent. Instead, in the judgment entry, the trial court incorrectly determined that Howard was not entitled to a competency evaluation because it "does not apply to the community control sanctions violations in this case." This is an incorrect statement of law because a competency evaluation is required by due process in revocation proceedings if there is a substantial basis for it. And Howard's competency status does apply to his community control violations in that it is a mitigating factor the trial court should have considered.

**{¶30}** We sustain Howard's sole assignment of error.

### IV. CONCLUSION

**{¶31}** Having sustained the assignment of error, we reverse the trial court's judgment.

JUDGMENT REVERSED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS REVERSED and that appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
         Michael D. Hess, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**